MORRIS GRAY & another, trustees, vs. AUGUSTUS HEMENWAY
& others.

Suffolk.    March 27, 1912. — May 27, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Capital and Income.   Trust.   Corporation.   Equity Pleading and Practice,* Costs.

A Pennsylvania railroad corporation operating in part over a long, crooked and
    hilly route in New Jersey, in order to make that route shorter and more advan-
    tageous had its engineers survey a cut-off route and caused a New Jersey corpora-
    tion to be organized to secure a right of way and build a railroad over the new
    route.   The New Jersey corporation secured the right of way and constructed the
    new route with funds furnished by the Pennsylvania corporation from its sur-
    plus.   For the funds so furnished the Pennsylvania corporation received all of
    the capital stock of the New Jersey corporation excepting such as was necessary
    to qualify the directors of that corporation.   The Pennsylvania corporation then
    received a perpetual lease of all the property of the New Jersey corporation,
    agreeing to pay to stockholders of the New Jersey corporation "interest at the
    rate of four per cent per annum upon the par value of" their stock, and declared
    to its own stockholders an extra dividend payable in shares of stock of the New
    Jersey corporation, the amount of which was much less than the accumulated
    earnings or undivided surplus of the Pennsylvania corporation.   Trustees who
    were stockholders of the Pennsylvania corporation by a bill in equity sought
    instructions as to whether such dividend should be treated as part of the princi-
    pal of the trust fund or should be distributed as income.   *Held,* that the dividend
    should be treated as income.

In this suit in equity by trustees for instructions as to whether a certain extra divi-
    dend paid to them by a corporation of which they were stockholders was a part
    of the principal of the trust fund or should be distributed as income, it being
    determined that the dividend should be distributed as income, it was *held,*
    that the costs of the litigation should be charged upon the principal of the fund.

BILL IN EQUITY, filed in the Supreme Judicial Court on February
21, 1912, by the trustees under the will of Augustus Hemenway,
late of Milton, for instructions as to whether a certain extra
corporation dividend described in the opinion and received by the
plaintiffs should be added to the principal of the trust fund or
paid over to those entitled to receive the income of that fund.

The case was reserved by *Braley,* J., upon the bill and answers
for determination by the full court.   The answers admitted the
allegations of fact in the bill.   From the bill it appeared that the

Delaware, Lackawanna and Western Railroad Company, desiring
to avoid a long, crooked and hilly route between Slateford, Penn-
sylvania, and Port Morris, New Jersey, for two years previous
to 1907 had engineering parties locating a new cut-off line between
those points and, a satisfactory line having been located, in that
year took preliminary steps for the organizing of a new corpora-
tion under the laws of New Jersey for the purpose of procuring the
right of way and building the line. Such a corporation was
organized on February 8, 1908, and was called the Lackawanna
Railroad Company, and the construction of the line was begun, the
Delaware, Lackawanna and Western Railroad Company advanc-
ing from its surplus all the money necessary for the enterprise,
for which it received capital stock of the New Jersey corpo-
ration at par and thus became the owner of all of that corpora-
tion's capital stock excepting such shares as were necessary to
qualify directors. The perpetual lease by the New Jersey corpora-
tion to the Pennsylvania corporation described in the opinion in-
cluded provisions that the New Jersey corporation should continue
its corporate existence and that its stockholders should receive
from the Pennsylvania corporation "interest at the rate of four
per cent per annum upon the par value of" their stock. Other
facts are stated in the opinion.

*H. D. Tudor*, for the plaintiffs, stated the case.

*J. L. Thorndike*, for the defendants entitled to the income.

*J. G. Palfrey*, as guardian *ad litem*, and for defendants interested
in remainder.

SHELDON, J. The dividend here in question was declared out
of its surplus or accumulated profits by the Delaware, Lackawanna
and Western Railroad Company, a corporation organized under
the laws of Pennsylvania. That corporation had invested a part
of its surplus by subscribing for and taking the stock of the Lacka-
wanna Railroad Company, a New Jersey corporation, the line of
which formed a cut-off between two points on the road of the
Pennsylvania company and so materially shortened its track.
The Pennsylvania company then took a perpetual lease of the rail-
road and all other property of the New Jersey company, and there-
after declared a dividend to its own stockholders payable in the
stock of the New Jersey company. The amount of this dividend
was much less than the accumulated earnings of undivided sur-

plus of the Pennsylvania company. The plaintiffs have received this dividend and now hold the same, amounting to two hundred and one shares of the capital stock of the New Jersey company and $25 in money, and ask to be instructed as to the disposition of this amount, whether it should be added to the principal of the trust fund or paid over to those who are entitled to receive the income of that fund.

In our opinion the case is governed in principle by the decision in *Leland* v. *Hayden*, 102 Mass. 542, 551. Here, as in that case, the shares distributed represented an investment of accumulated profits, and it can make no difference that the investment was made by original subscription for the shares taken instead of purchasing them in the market. Here, as in that case, if the directors of the Pennsylvania company had sold the shares and divided the proceeds among their stockholders, there could have been no doubt that it was a cash dividend and belonged, as between tenants for life and remaindermen, to the former. Here, as in that case, the declaration and payment of the dividend did not affect the value of the shares on which it was made relatively to the whole capital stock of the company. In essential respects the two cases are alike.

It is the characteristic feature of a stock dividend that the property of the corporation itself remains unchanged, but that each one of the shares of the increased capital stock represents a smaller fractional interest than before in the total amount of the corporate property. On the other hand it is the characteristic feature of a dividend declared and paid wholly from the net profits or undivided earnings that it does diminish the property of the corporation by exactly the amount of the dividend so paid out, while it leaves the fractional interest represented by each share of the capital stock exactly what it was before. *Gibbons* v. *Mahon*, 136 U. S. 549, 559, 560. Tested in this way, the dividend here in question was not a stock dividend properly so called. It left the corporation the poorer by what was given to the stockholders; it left the proportional interest of each stockholder in the diminished *quantum* of the corporate property exactly what it had been.

As in *Leland* v. *Hayden*, *ubi supra*, we do not regard the fact that the dividend was payable in stock as decisive. Just as a

dividend purporting to be made in cash will be regarded as a stock dividend, when it manifestly was intended to be such, because the real nature of the transaction must be determined from what was done in carrying it out (*Daland* v. *Williams,* 101 Mass. 571; *Rand* v. *Hubbell,* 115 Mass. 461; *Brownell* v. *Anthony,* 189 Mass. 442; *Bouch* v. *Sproule,* 12 App. Cas. 385), so the mere fact that a dividend may first or last take the shape of certificates of stock does not necessarily make it a stock dividend. *Leland* v. *Hayden, ubi supra. Hyde* v. *Holmes,* 198 Mass. 287.

Moreover by a stock dividend is generally understood a distribution made by a corporation of shares of its own stock. This was not such a case. The shares distributed were those of another and wholly different corporation, created under the laws of another State and having an absolutely distinct corporate existence. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association,* 211 Mass. 398, 403, 404. For this reason also what took place here was not in any sense a distribution which, without affecting the intrinsic value of the corporate property, simply divided it into a greater number of shares. The capital stock of the dividing corporation was the same after the declaration and payment of this dividend as before. In this respect the case resembles *Gray* v. *Hemenway,* 206 Mass. 126, in which the stockholders received money with a strong inducement to invest it at once in the stock of another corporation, while here they receive the stock of another corporation and are left at liberty to keep it or dispose of it as it may please them to do.

This dividend was in no sense a partial liquidation of the capital stock of the corporation or of capitalized profits used in its business, as in *Heard* v. *Eldredge,* 109 Mass. 258, *Gifford* v. *Thompson,* 115 Mass. 478, *Mercer* v. *Buchanan,* 132 Fed. Rep. 501. See *D'Ooge* v. *Leeds,* 176 Mass. 558. If the corporation had sold these shares instead of distributing them, that would not have involved such a liquidation. Nor was the amount of the dividend a profit realized from increases in value or fortunate reinvestments of capital, as in *Smith* v. *Hooper,* 95 Md. 16.

The use made by the corporation of a part of its surplus fund in taking shares of the stock of another company was, as we have said, an investment, rather than a capitalization thereof by applying it upon the road or other permanent works of the company it-

self. It was none the less an investment that it doubtless was intended to be indirectly advantageous by allowing the company to obtain a shorter line of railroad as well as directly profitable from its capability of returning a fair income. For this reason we have not found it necessary to consider the question suggested in *Hemenway* v. *Hemenway,* 181 Mass. 406, 411, and somewhat discussed at the bar, whether accumulated profits once devoted to permanent capital purposes can be set free and divided as income among stockholders by the paying in of an equal amount as capital. The decisive fact is that this was an investment rather than a permanent application of the company's own property. It remained in the control of the directors; and their action taken in good faith in paying it out as a dividend to the stockholders is not to be reviewed by us. See besides the cases already cited, *Minot* v. *Paine,* 99 Mass. 101; *Davis* v. *Jackson,* 152 Mass. 58; *Smith* v. *Dana,* 77 Conn. 543.

The petitioners are to be instructed that this dividend should be treated as income and paid to the beneficiaries for life according to their respective interests.

The costs of the litigation should be charged upon the principal of the fund. *Beauclerk* v. *Ashburnham,* 8 Beav. 322, 329. *In re Hubbuck,* [1896] 1 Ch. 754, 762. *In re Bennett,* [1896] 1 Ch. 778, 783, 787. In this way the burden will fall in due proportion upon all the parties in interest, as in *Plympton* v. *Boston Dispensary,* 106 Mass. 544, 547.

*So ordered.*